## Boteler v. Catanzaro

*David L. Mitchell* and *J. P. Keleher*, for plaintiff.

*I. R. Rubin*, for defendant.

GARDNER, J., September 27, 1934.—This is an action on a promissory note on which the defendant is both joint maker and endorser. The defendant was president and one of the principal stockholders in the Catanzaro Fruit Company, a corporation organized under the laws of the State of California and having its principal office and place of business in Los Angeles, California. On July 22, 1924, an involuntary petition in bankruptcy was filed in the District Court of the United States for the Southern District of California against the Catanzaro Fruit Company, in which proceeding certain creditors were represented by L. Boteler, plaintiff here. The Catanzaro Fruit Company was desirous of having the bankruptcy proceeding withdrawn and on August 9, 1924, an agreement was entered into between the Catanzaro Fruit Company and plaintiff whereby the company agreed to give to the plaintiff a promissory note secured by S. L. Catanzaro, the defendant, for the sum of $22,687.31, being the total amount of the company's indebtedness to various unsecured creditors. The note under this agreement was to be paid in instalments within a period of 2 years after its date. The plaintiff, in consideration for this note, agreed that he would use his best endeavors to secure the consent of the merchandise creditors to extend the time of the payment of their several indebtedness and the securing of the consent of 90 percent of said creditors

thereto, in writing, should be deemed a compliance with the agreement. These funds, so collected, were to be distributed pro rata among the various creditors whose signatures he would secure to the agreement of extension. It was further provided in the agreement that if the aggregate amount of the unsecured creditors exceeded the amount of the note, an additional note should be given for such difference, and if such amount, when ascertained, would be less than the note, the second party would immediately credit such difference on said note. The note in question bears the same date as the agreement, August 9, 1924, and is drawn in accordance with the terms of the agreement.

The plaintiff secured the signatures of more than 90 percent of the number of creditors, but the aggregate amount of claims of said creditors amounted to $13,-256,59, which was not 90 percent of the total amount of the unsecured claims. On or about September 10, 1924, after 90 percent in number of the said merchandise creditors had agreed to the extension, the bankruptcy proceedings were withdrawn.

The case came on for trial and at the trial counsel placed the following stipulation upon the record:

"It is stipulated and agreed by and between counsel for plaintiff and counsel for the defendant that this entire matter shall be submitted to the court as a question of law under the agreement, exhibit A, of the plaintiff's statement of claim. If the court should determine as a matter of law that the plaintiff was required to secure the consent of 90 percent in number of the creditors and not 90 percent in amount, then judgment shall be entered for the plaintiff for the full amount of its claim. If, on the other hand, the court should determine that under the agreement, exhibit A, the plaintiff was required to secure the consent of 90 percent in amount of the creditors, then judgment shall be entered for the defendant."

The court thereupon directed the jury to find a ver-

dict for the plaintiff in the principal sum of $13,256.59 with interest as provided in said note, or a total of $24,451.98. The matter is now before the court on defendant's motion for judgment n. o. v.

Whether or not this motion shall be allowed depends upon the interpretation of the agreement aforesaid. The part of the agreement which is pertinent to this question is as follows:

"Said second party (the plaintiff) agrees to use his best endeavors to secure the consent of the said merchandise creditors to extend the time of the payment of their several indebtednesses in accordance with the terms and conditions of this agreement and the securing of the consent of 90 percent of said creditors thereto, in writing, shall be deemed a compliance herewith."

The defendant contends that where the agreement is to secure consent of 90 percent of the creditors thereto, it means 90 percent in amount of the claims and not 90 percent in number of creditors.

In support of this contention he cites the Canadian case of In Re Bluebird Fashion Shops, Ltd., 59 D. L. R. 549. The Canadian bankruptcy statute provides that a debtor may obtain an extension of the time for the payment of his indebtedness by securing the consent of a "majority of all the creditors." In that case the court held that the quoted words mean a majority in interest, and not merely a majority in number of the bankrupt's creditors.

He also cites Fredericks et al. v. Pennsylvania Canal Co., 109 Pa. 50, a case involving the interpretation of the Act of June 2, 1870, P. L. 1318, which authorized the abandonment of a canal company's property provided at least two thirds of the stockholders approved and consented to the same. The court in that case held that the proviso meant two thirds in interest and not two thirds in number.

Likewise in the case of Toledo Traction, Light & Power

Co. v. Smith, 205 Fed. 643, cited by defendant's counsel, the court held that the words, "two thirds of the stockholders" should be considered as if reading "two thirds of the stockholders in interest."

There is a marked difference between an act of assembly regulating the conduct of a corporation, by which act the minority is affected by the vote of the majority, and the instant case, wherein the agreement affects neither minority nor majority, but only the parties thereto. It would be against public policy to allow the minority in interest to control the actions of a group, but it is not contrary to public policy to permit two individuals to enter into an agreement such as the one now before the court. Here we have a contract between two individuals, affecting them alone. In the cited cases there was an attempt on the part of a minority in interest to control the majority through the use of a carelessly worded statute, and the courts naturally did not permit such an abuse.

In the present case we must look to the four corners of the agreement for its interpretation. Throughout the entire agreement it is the evident purpose of the parties thereto that the party of the second part should secure the consent of 90 percent in number of the creditors and not 90 percent in interest. This seems to be clear from the very language used in the pertinent part of the agreement hereinbefore quoted, wherein the "second party agrees to use his best endeavors to secure the consent of the *said* merchandise creditors to extend the time of the payment of their *several* indebtednesses." The use of the words "several indebtednesses" seems to us clearly to indicate that the creditors were considered as to their numbers and not as to their interests. This is immediately followed by the agreement to secure the consent of "90 percent of said creditors." It would appear, therefore, that the parties intended to be bound by the note in question provided the plaintiff secured the consent of 90 per-

cent of all the creditors in number, and upon so doing the condition precedent to the validity of the note was complied with and the note became a binding obligation. The purpose of securing the extension of 90 percent of the creditors was in order that the petition in bankruptcy against the Catanzaro Fruit Company might be withdrawn. The parties by their conduct placed that interpretation upon their agreement by the withdrawal of the bankruptcy petition with the consent of the defendant.

The motion for judgment n. o. v. will therefore be refused.